ALEXANDER HAMILL *vs.* SYLVIA C. HAMILL.

*Partnership Rights—Appointment of a Receiver.*

Where a partner absconds, his co-partner is entitled to take possession of the partnership property and effects, for the benefit of the firm; and the appointment of a receiver by the Court to take charge of the property of the absconding partner, does not operate to divest the partner remaining, of his right to the partnership property.

To justify the appointment of a receiver to take possession of partnership property, there must be allegations of waste and fraud committed, or about to be committed by one partner, to the loss and injury of the other partner, or his legal representatives. A receiver, as an officer of the Court which appoints him, is bound to obey its orders; and where,'under a misapprehension of his duties and rights, he takes possession of partnership property, the Court may require him to make restitution of the same.

APPEAL from the Circuit Court of Baltimore City.

On the 7th of February, 1865, in the Circuit Court of Baltimore City, the appellee filed a bill for divorce *a vinculo matrimonii* against her husband, William J. Hamill, alleging adultery and abandonment, and that he was beyond the jurisdiction of the Court, and asking alimony *pendente lite*, and alimony, and the appointment of a receiver to take charge of the property of her husband, including an establishment for the refining of coal oil, and also that an injunction might issue. A receiver was appointed and the injunction issued. Shortly afterward

an order was passed requiring the receiver to pay to the appellee as alimony *pendente lite*, the sum of two hundred dollars a month, and finally a decree for divorce as prayed for. At this stage of the proceedings the appellant filed a petition, alleging that he was the father of the said William, and his partner in the business of "Coal Oil Refining" at the time of his desertion of his wife—that he and his said son had taken the lease of the property at the south-east corner of Eden street and Canton avenue—that he had furnished a large part of the capital for the construction of the building originally erected on said lot, as also a large part of the capital for carrying on the said business of "Coal Oil Refining," and he asked to be allowed to become a party defendant in the case. The Court, the solicitor for the complainant (now appellee) consenting, passed an order making him a party defendant. The appellee filed her answer in which she denied that the appellant was a co-partner of the said William at the time of his desertion of her, and that he and the said William have a lease of the lot mentioned; and whilst admitting that prior to 1861 certain buildings were erected on said lot by the appellant and the said William, she denied that the appellant furnished a large part of the capital for the erection thereof—she admitted that after a fire in 1861, which destroyed the buildings, the co-partnership which had previously existed between the appellant and the said William was *virtually dissolved*, and that new buildings were erected on said lot, and the necessary machinery and stock to carry on the business were purchased and placed therein by the said Willam, out of his own private funds, and that again in 1862 said buildings, with the machinery and stock, were destroyed by fire; that after the last mentioned fire the said William erected the buildings now used as a "Coal Oil Refinery" out of his own funds. After the coming in of the answer a commission was issued, and thereunder a large amount of testimony

was taken. The Court, after consideration of the petition, answer, evidence and argument therein by counsel, dismissed the petition on the ground that the appellant had failed to establish affirmatively, the co-partnership as alleged by him. Subsequently the appellant moved the Court to rescind the order previously passed appointing a receiver, on the ground that he was a co-partner of his son in the property or a part thereof, mentioned in the proceedings, and therefore entitled to its possession and control. The Court overruled the motion. From the decree dismissing the petition, as also from the order overruling the motion to rescind the appointment of the receiver, this appeal is taken.

The cause was argued before Bowie, C. J., Bartol, Weisel and Crain, J.

*John T. Morris* and *Edward Otis Hinkley*, for the appellant, contended:

That there was error in the opinion of the Judge below, " that the appellant had not established affirmatively the partnership alleged by him." The evidence shows, as will be seen by a careful examination of it, that there did exist a partnership as alleged, in 1861, and the burden of proof was then upon the appellee to establish affirmatively a dissolution of it. But even assuming that the burden is upon the appellant, to show both the formation and the continuation of the partnership, that is to prove affirmatively that the partnership which once existed was not dissolved, there is abundant evidence to show its continued existence ever since its formation. The use of the firm name by William during the whole period of his presence, is a clear admission of its existence. For although it may be argued that such use of a partnership name is often made after dissolution, *by consent*, yet the answer is conclusive, that without evidence of *such consent*

(and there is no such evidence here) no assumption can be made of the fact of its being so used, and the necessary implication of its use in the regular, ordinary and legitimate way must remain and bind the man who used it. This use of the firm name is shown by the sign of the firm being kept up, until the receiver ordered it to be painted out; by the notes of the firm being given by William; by the acceptance by William, in the name of the firm, of the Pittsburg draft; by the fact that all the bills for all three factories, and for oil purchased, were made out against the firm, and all the business was done in the name of the firm. And after William left Baltimore, it appears that the appellant was called upon by the appellee to sign an order, for the purpose of settling a partnership affair with M. Logan. The evidence is clear that the appellant invested large sums of money in the business, not only in building the factories, but also in buying goods. The lease of the land in the joint names of William and Alexander cannot, by any means, except by some writing, be taken away from the appellant, and there is no such writing, the evidence being that the appellee tried to get it, but the appellant refused. If it be argued that the partnership was dissolved, it may be asked *when?* it certainly was not by all the evidence, before William left. Can it, with any pretext of justice, be argued that the fires, or either of them, dissolved that partnership, or that the rebuilding of the factory a third time by William, while Alexander was paralyzed, had the effect to dissolve the partnership, and vest exclusive title to the land in William?

Again, can William's running away justly deprive Alexander of any rights, or in any manner change the land title? Even if it be assumed, which we contend is not law, without any proof of any agreement between parties for dissolution, that the running away of one partner does of itself actually and legally dissolve a part-

nership, without any legal proceeding to declare a dissolution for such cause, what is the result? It still does not deprive the remaining partner of his rights, which are to retain possession of the partnership property and wind up its affairs. As the Court has taken the property in this case out of the possession of the appellant, by appointing a receiver, without any cause or necessity shown, we ask this Court to declare the right of the appellant to possession and to wind up the business. Even if this Court should find from the facts in the case that there was a dissolution, and should be of opinion that the appellee, claiming in the divorce bill, has all the rights of her husband, still it must be asked, was there ever any settlement of the partnership affairs? There is no evidence of any. So that finally, if this Court think it equitable to let one claiming under a partner who has run away, have a receiver put on the partnership property, without any impropriety of conduct on the part of the remaining partner, either alleged or shown, and that without any bond, and where the remaining partner is competent and willing to settle the affairs without charge, and to give any bond required, there yet remains the questions, is not the appellant entitled to an account, and is there evidence sufficient under the Statute of Frauds to divest him of his title to the land, and which we submit to the decision of this Court? The case depending almost wholly on the facts, there is scarcely any occasion to refer to decisions upon the subject of partnership, and the appointment of receivers, but it may be suggested that there are certain known modes of dissolution of a partnership, clearly laid down in the text books, as to none of which is there any evidence here, and there are certain just grounds for appointment of receivers, none of which are shown here. The Court may decide what part of the evidence excepted to is admissible, but it is contended that even if all the evidence offered by the

appellee be admitted, it is not sufficient to change the result that Alexander was a partner and entitled to possession; the very letter of William when he went away, if admissible, shows an existing partnership and that no settlement had been made.

*Robert C. Barry* and *Charles J. M. Gwinn,* for the appellee, contended :'

That the Court below did not err in ruling that the *onus probandi,* was upon the appellant, to establish affirmatively the co-partnership alleged by him; and in overruling his motion to rescind the appointment of the receiver, because such is the well settled rule of Equity Jurisprudence. 1 *Greenleaf's Evi.,* sec. 74; *Gresley's Eq. Ev., sec.* 388; *Robert vs. Salisbury,* 3 *Gill & John.,* 425; *Benson vs. Wallace,* 4 *Gill & John.,* 479. The petition of the appellant, which was under oath, and alleged a .co-partnership between him and the said William J. Hamill, and that he was interested in the property described in the proceeding, is contradicted by the answer of the appellee, likewise under oath, and it was therefore incumbent upon the appellant, to establish by affirmative proof, the facts alleged in his petition, before he was entitled to the relief asked. A material allegation in a bill, (and it is submitted that the same rule applies to a petition,) even though not denied, must be proved. *Joice vs. Taylor,* 6 *Gill & John.,* 54; *Dilly vs. Barnard,* 8 *Gill & John.,* 170.

An answer, responsive, to the bill, denying its allegations, is conclusive upon that question, unless overcome by the testimony of two witnesses, or one with corroborating circumstances. *Feigley vs. Feigley,* 7 *Md. Rep.,* 537. Such was the well settled rule prior to the Act of 1852, ch. 133; and such is still the rule, where the cause, at final hearing, is heard upon the bill and answer. *Warner vs. Twilley,* 10 *Md. Rep.,* 39. This rule is not

altered by Section 103 of Article 16 of the Code of Pub. Gen. Laws, in cases like the one at bar ; that section not applying to motions to discharge a receiver. If, then, this case were to be tried upon the petition and answer, there is no doubt the judgment of the Court below, dismissing the petition, must be affirmed, because the appellant did not establish affirmatively the partnership alleged by him. And it is submitted that an examination of the evidence, offered in the Court below, by the respective parties, will demonstrate that so far from the appellant's allegations of partnership, as stated in his petition, being established affirmatively, it was clearly shown that said allegations were unfounded, and the Court below acted properly in dismissing his petition, and overruling his motion to rescind the appointment of the receiver.

CRAIN, J., delivered the opinion of this Court.

The record in this case discloses the fact that about the 20th of August, 1864, William J. Hamill, the son of the appellant, deserted his lawful wife, and six infant children, and fled with his paramour to Europe. It does not appear that he authorized or empowered any one to take charge of his property, for the purpose of protecting and preserving it. The appellee, deserted and abandoned by her husband, filed her bill in the Circuit Court of Baltimore City, for a divorce *a vinculo matrimonii*, which she obtained, and the Court appointed a receiver to take possession of the property of the husband. The receiver, after executing his bond, proceeded to take charge of all the property of W. J. Hamill, including an oil refining establishment at the corner of Eden street and Canton avenue. The appellant, at this stage of the case, filed his petition in the cause, alleging that he was a partner of his son W. J. Hamill in carrying on the coal oil refining business, and asking to be made a party

" defendant in the case, to enable him fully and properly to represent his interest in the matter." Upon the filing of the answer of the appellee, denying the allegations of the petitioner, a commission, by consent, was issued, to take testimony, and a large mass of evidence was taken to prove and disprove the co-partnership. At the hearing of the petition, the Judge of the Circuit Court dismissed the petition, on the ground that there was no evidence to establish affirmatively the co-partnership as alleged by him. This Court is now called on to adjudicate a question of fact, and to determine whether the Judge was justified, from the evidence in the cause, in dismissing the petition of the appellant, on the ground that he had failed to prove, affirmatively, the co-partnership of his son and himself, as alleged in his petition. From our examination of the evidence, we are satisfied that the appellant and W. J. Hamill entered into a co-partnership in 1861, as alleged by Alexander Hamill. In this opinion we do not deem it necessary to state in detail all the testimony taken in the cause.

It must be conceded, as it was clearly proved, that the property was jointly leased by them for carrying on the coal oil refining business, and that it was carried on in the name of A. & W. J. Hamill. Nor do we find evidence sufficient to satisfy us, that the partnership was dissolved previous to the absconding of W. J. Hamill in August, 1864, for we find as late as 11th of June, 1864, that W. J. Hamill accepted a draft drawn on him in the name of A. & W. J. Hamill. And Alexander Hamill, in his evidence, states positively that they were partners to the time of his son's absconding from Baltimore, and his evidence is not contradicted by any witness, or by any facts and circumstances developed by the testimony taken in the cause. Both parties treated the partnership as existing up to the period of the absconding of W. J. Hamill; and those claiming under W. J. Hamill are con-

cluded by his acts and declarations. We are therefore of opinion that the Circuit Court erred in dismissing the appellant's petition. As the appellant was invested with all the rights of a partner, he was entitled, upon the absconding of W. J. Hamill, to take possession of the partnership property and effects for the benefit of the company, and the appointment of a receiver by the Court to take charge of the property of W. J. Hamill, did not operate to divest Alexander Hamill of his rights to the partnership property, and we know of no principle of equity which would justify the appointment of a receiver to take possession of partnership property without allegations of waste and fraud committed or about to be committed by one partner to the loss and injury of the other partner or his legal representative. In the absence of all such averments and allegations, a receiver appointed to take possession of the property and effects of W. J. Hamill, had no legal right or authority to dispossess Alexander Hamill of the partnership property. As a receiver is an officer of the Court, he must obey the orders of the Court, and as the receiver in this case has taken possession of the partnership property under a misapprehension of his duties and rights, the Court can order and require him to make restitution of the partnership property to the appellant.

We shall reverse the decree of the Circuit Court and remand the case to be proceeded with in conformity to the views expressed in this opinion.

*Decree reversed and cause remanded.*

(Decided 12th November, 1867.)